# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELICIA S. MURDOUGH,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>    Defendant. | CIVIL ACTION NO. 3:19-CV-01408<br><br>(MEHALCHICK, M.J.) |

## MEMORANDUM OPINION

Plaintiff Delicia S. Murdough brings this action under section 1631(c) of the Social Security Act, 42 U.S.C. § 1383(c) (incorporating 42 U.S.C. § 405(g) by reference), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for supplemental security income under Title XVI of the Act. (Doc. 1). On December 11, 2019, pursuant to 28 U.S.C. § 636(c)(1), the parties consented to the undersigned's jurisdiction to adjudicate all pretrial and trial proceedings relating to this action. (Doc. 11).

For the following reasons, the Commissioner's decision is **AFFIRMED**, final judgment is entered in favor of the Commissioner, and the Clerk of the Court is directed to close this case.

## I.   BACKGROUND AND PROCEDURAL HISTORY

In November 2015, Murdough filed a Title XVI application for supplemental security income, claiming disability beginning January 1, 2012, due to major depression, scoliosis, anxiety, post-traumatic stress disorder (PTSD), and bipolar disorder. (Doc. 8-6, at 6). The Social Security Administration initially denied the application in December 2015, prompting

Murdough's request for a hearing, which Administrative Law Judge (ALJ) Timothy Wing held on January 18, 2018. (Doc. 8-2, at 16). In a July 2018 written decision, the ALJ determined that Murdough is not disabled and therefore not entitled to benefits or income under Title XVI. (Doc. 8-2, at 16). The Appeals Council subsequently denied Murdough's request for review. (Doc. 8-2, at 2).

On August 2019, Murdough commenced the instant action. (Doc. 1). The Commissioner responded in July 2019, providing the requisite transcripts from Murdough's disability proceedings. (Doc. 7; Doc. 8). The parties then filed their respective briefs, with Murdough raising one principal bases for reversal or remand. (Doc. 10; Doc. 12).

## II. STANDARDS OF REVIEW

To receive benefits under Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).[1]

### A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration,

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess,* 931 F.3d at 201; *see* 20 C.F.R. § 416.912(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 416.912(a)(1).

    B.    JUDICIAL REVIEW

The Court's review of a determination denying an application for Title XVI benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Murdough was disabled, but whether the Commissioner's determination that Murdough was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III. THE ALJ'S DECISION

In his written decision, the ALJ determined that Murdough "has not been under a disability, as defined in the Social Security Act, since November 5, 2015, the date the application was filed." (Doc. 8-2, at 26). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a).

#### A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or

4

work experience. 20 C.F.R. § 416.920(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 416.972. The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 416.974. Here, the ALJ determined that Murdough "has not engaged in substantial gainful activity since November 5, 2015, the application date," and therefore proceeded to step two of the analysis. (Doc. 8-2, at 18).

B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment – or combination of impairments – that is severe and meets the 12-month duration requirement. 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 416.920(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Murdough had five severe, medically determinable impairments: spine disorder (including scoliosis and left spondylolisthesis), bipolar disorder, major depressive disorder, generalized anxiety disorder, and PTSD. (Doc. 8-2, at 20).

C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.925, 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments

meet a listing, then the claimant is considered disabled, otherwise the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 416.920(d). Here, the ALJ determined that none of Murdough's impairments, considered individually or in combination, meet or equal the severity of a listed impairment. (Doc. 8-2, at 19). The ALJ specifically considered listing 1.04 (disorders of the spine) of the appendix (musculoskeletal system disorders) and determined that there was no evidence of nerve root compression characterized by particular findings, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. (Doc. 8-2, at 19). Specifically, upon determining whether Murdough's impairment(s) met or equaled listing 1.04A, the ALJ concluded that there were some examinations that indicated a positive straight-leg raise on the left side, but they did not establish that this was true for both sitting and supine positions as required by listing 1.04A. (Doc. 8-2, at 19).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 416.929(b)–(c). Here, Murdough alleged that her medical impairments caused difficulties lifting, squatting, bending,

standing, reaching, walking, sitting, kneeling, climbing stairs, and completing tasks. (Doc. 8-6, at 21). Murdough further alleged that her medical impairments affected her ability to concentrate, understand, use her hands, get along with others, and retain information. (Doc. 8-6, at 21). The ALJ found that while Murdough's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Murdough's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 8-2, at 22). The ALJ then went on to detail Murdough's medical records and treatment history. (Doc. 8-2, at 19-24). After weighing and considering the evidence, the ALJ determined that Murdough had the, "[RFC] to perform light work as defined in 20 CFR 416.967(b)," with additional limitations:

> [Murdough] can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for six hours total and sit for six hours total in an eight-hour workday with normal breaks. The claimant must avoid occupations that require climbing on ladders, ropes, and scaffolds. She must avoid concentrated prolonged exposure to environments with temperature extremes, extreme dampness, and humidity. She is limited to occupations requiring no more than simple, routine, and repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes. Finally, the claimant is limited to occupations that require no more than occasional interaction with supervisors, co-workers, and members of the general public.

(Doc. 8-2, at 22).

E. STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it.

416.920(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82-62 (S.S.A.), 1982 WL 31386, at *3). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, based on testimony adduced from a vocational expert at Murdough's administrative hearing, the ALJ determined that Murdough had no past relevant work and proceeded to step five of the sequential analysis. (Doc. 8-2, at 24).

F. STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. § 416.920(a)(4)(v). Here, considering Murdough's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Murdough could have performed. (Doc. 6-2, at 25). In making that determination, the ALJ relied on the vocational expert's testimony that Murdough was able to perform the requirements of occupations such as a photocopy clerk, a mail sorter, and a retail marker with open positions ranging from 66,000 to 1.4 million nationally. (Doc. 8-2, at 25). Accordingly, the ALJ determined that Murdough was not disabled and denied her application for benefits. (Doc. 8-2, at 26).

## IV. DISCUSSION

Murdough advances one argument on appeal, asserting that the ALJ erroneously determined that she did not have an impairment or combination of impairments that meets or medically equals listing 1.04. (Doc. 10, at 3). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and reflects a proper application of the law and regulations. (Doc. 7, at 3). For the reasons following, the Court finds that the substantial evidence supports the ALJ's finding that Murdough does not have an impairment or combination of impairments that meets or medically equals listing 1.04, and that ALJ properly applied the law.

Murdough contends that the ALJ erroneously concluded, at step three, that her impairments, individually or collectively, did not meet or medically equal listing 1.04 (disorders of the spine). (Doc. 10, at 3). It is the responsibility of the ALJ to identify the relevant listed impairments given "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000). If a claimant's impairments meet or equal one of the listed impairments, a claimant is per se disabled under the regulations. 20 C.F.R. § 416.920(d); *Burnett*, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, the claimant bears the burden of presenting "medical findings equivalent in severity to all criteria for the most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original); 20 C.F.R. § 416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. *Zebley*, 493 U.S. at 521.

Murdough argues that her impairments meet or medically equal listing 1.04A and

9

1.04C. Generally, to meet listing 1.04A or 1.04C, an individual must experience disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. 20 C.F.R. Part 404, Subpt P, App. 1 § 1.04. The individual must also meet or medically equal the criteria set forth in listings 1.04A or 1.04C. 20 C.F.R. Part 404, Subpt P, App. 1 §§ 1.04A, 1.04C. Listing 1.04A requires evidence of "nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss . . . ." 20 C.F.R. Part 404, Subpt P, App. 1 § 1.04A. Listing 1.04C requires lumbar spinal stenosis resulting in pseudoclaudication, established by findings confirmed by appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R. Part 404, Subpt P, App. 1 § 1.04C.[2]

In this case, viewing the record as a whole, the Court finds that the ALJ's step-three determination is supported by substantial evidence. Murdough argues that she has long suffered from a congenital spine disorder, which worsened in 2012 after the birth of her daughter. (Doc. 10, at 3; Doc. 8-2, at 57-58). She asserts that the ALJ erred by acknowledging that her spinal condition was a severe impairment yet concluding that the criteria of listing 1.04 were not satisfied. (Doc. 10, at 3). More specifically, Murdough submits that the ALJ's

---

[2] "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Part 404, Subpt P, App. 1 § 1.00B2b1. "Ineffective ambulation is defined generally as having insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Part 404, Subpt P, App. 1 § 1.00B2b1 (internal citation omitted).

determination that there was no evidence of nerve root compression is belied by the ALJ's finding that there were examinations indicating a positive straight-leg raise on the left side. (Doc. 10, at 5). To support her argument, Murdough identifies medical records dated approximately one year after the ALJ's decision. (Doc. 10, at 3-8). Murdough contends that the medical records demonstrate the presence of listing-level impairments, which should have resulted in an award of benefits under listing 1.04A or 1.04C. (Doc. 10, at 7).

Contrary to Murdough's assertions, substantial evidence supports the ALJ's determination that Murdough's impairment or impairments did not meet or medically equal listing 1.04A or 1.04C (including an inability to ambulate). "An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient." *Zebley*, 493 U.S. at 521. The record here does not establish that Murdough exhibited all the criteria provided in listing 1.04A or 1.04C. As the ALJ observed, despite evidence of severe impairments, muscle tenderness in the lumbar region, and positive straight-leg raises on the left side upon physical examinations, Murdough generally exhibited full motor strength, intact neurological function, normal lumbar range of motion, and normal gait. (Doc. 8-10, at 33-34; Doc. 8-11, at 14, 33, 36, 39, 42, 50; Doc. 8-14, at 18; Doc. 8-15, at 6, 11; Doc. 8-16, at 47, 50). The medical evidence reflected relatively mild clinical and x-ray findings and no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. (Doc. 8-16, at 2, 49; Doc. 8-2, at 19). While Murdough argues that there were examinations indicating a positive straight-leg raise on the left side, as thoroughly explained by the ALJ, the record evidence fails to establish this was true for both sitting up and supine positions, pursuant to the listing 1.04A. (Doc. 10, at 5). The medical records document that Murdough walks with a cane to compensate for gait problems but do not

establish that an assistive device is medically necessary. (Doc. 8-8, at 27; Doc. 8-8, at 44); SSR 96-9 (S.S.A.), 1996 WL 374185 at *7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing . . . .").

Indeed, there appears to be substantial evidence in Murdough's self-reports alone to support the ALJ's decision that her physical impairments are not wholly disabling and do not meet a listing. At her administrative hearing, Murdough testified that she could use the stairs, play with her daughter, watch movies, and engage in basic household tasks, including washing the dishes, preparing simple meals, and sweeping the floors. (Doc. 8-2, at 60-61). She described her daily activities as listening to music, coloring, writing, reading, and crocheting and noted that she had engaged in full-time and part-time work after the application date (November 5, 2015), including two factory jobs at Maid Rite and Arlington Industrials and as a cashier at Joe's Kwik Mart. (Doc. 8-2, at 51, 55, 62). Despite her impairments, Murdough can lift about 30 pounds. (Doc. 8-2, at 56).

The ALJ also considered the third-party function report prepared by Murdough's grandmother, Euliah Murdough, who described daily activities that Murdough could perform regularly so long as she was not in pain or a bad mood, including making simple meals, cleaning her room, doing laundry, going shopping, and caring for her daughter. (Doc. 8-6, at 37-39). Similar to Murdough's testimony, her grandmother also reported her hobbies and interests as reading, writing, coloring, and watching television. (Doc. 8-6, at 40). This report provides further support for the ALJ's determination that Murdough's physical impairments were not wholly disabling and do not meet a listing.

Lastly, in support of her argument, Murdough identifies medical records dated

approximately one year after the ALJ's decision. (Doc. 10, at 3, 8). However, it is well-established that if a claimant proffers evidence in the district court that was not previously presented to the ALJ, the district court may remand to the Commissioner, but that disposition is governed by sentence six of § 405(g). *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). Sentence six of § 405(g) provides the following:

> "[If] a claimant seeks to rely on evidence that was not before the ALJ," the Court may "remand the case to the Commissioner for consideration of that evidence under the sixth sentence of § 405(g), but only if the evidence is 'new' and 'material,' and only if the claimant shows good cause why it was not presented to the ALJ."

*Szubak v. Secretary of Health and Human Services*, 745 F.2d 831 (3d Cir. 1984); *Pennington v. Comm'r of Soc. Sec.*, 683 F. App'x 168, 170 (3d Cir. 2017). Here, Murdough fails to demonstrate how the post-decision evidence meets the standard for a sentence six remand. Murdough also fails to demonstrate how the postdated evidence shows that she met all the requirements of Listing 1.04A or 1.04C. Accordingly, the ALJ did not err in his step-three evaluation.

## V. CONCLUSION

The Commissioner's decision is **AFFIRMED**, final judgment is entered in favor of the Commissioner, and the Clerk of the Court is directed to close this case.

An appropriate Order will follow.

BY THE COURT:

Dated: April 9, 2020

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**